UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JASON LANG BELCHER, )
)
    Plaintiff, )
)
v. ) No. 3:11-00214
) JUDGE HAYNES
)
VIACOM, INC., VIACOM MEDICAL PLAN, )
VIACOM RETIREMENT COMMITTEE, and )
UNITED HEALTHCARE SERVICE, LLC, )
)
    Defendants. )

# MEMORANDUM

Plaintiff, Jason Lang Belcher, filed this action under the Employees Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. against the Defendants, Viacom, Inc., Viacom Medical Plan ("the Plan"), Viacom Retirement Committee ("VRC"), and United Healthcare Service, LLC ("United"). Plaintiff asserts claims for wrongful denial of benefits under 29 U.S.C. § 1132(a)(1)(B); breach of fiduciary duty under 29 U.S.C. § 1132(a)(2); injunction for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3); and failure to supply requested documents under 29 U.S.C. § 1132(a)(1)(A), (c).

Before the Court is Defendant United's motion to dismiss Counts II, III and IV of Plaintiff's Complaint (Docket Entry No. 18), contending, in sum: (1) that Plaintiff, as an individual, is not entitled to relief under § 1132(a)(2) for breach of fiduciary duty as such relief under § 1132(a)(2) is only available to the plan, not to individual participants; (2) that Plaintiff cannot pursue a claim for breach of fiduciary duty under § 1132(a)(3) where he has an available remedy based upon a claim

for denial of benefits under § 1132(a)(1)(B); and (3) that because § 1132(c)(1) imposes a duty only on the "plan administrator," Plaintiff cannot maintain a claim for failure to supply requested documents under 29 U.S.C. § 1132(a)(1)(A), (c) against United that is the "claim administrator."

In response, Plaintiff contends that: (1) ERISA authorizes a participant to assert a breach of fiduciary duty claim along with a denial of benefits claim, and that based upon United's actions as a fiduciary Plaintiff is entitled to relief under 29 U.S.C. § 1132(a)(2), (3); and (2) United should be deemed a plan administrator based upon its admission to being a "claims administrator" and its instructions to Plaintiff's health care provider in a manner contrary to the plan documents.

## I. ANALYSIS OF COMPLAINT

Plaintiff, thirty-four year old Jason Lang Belcher, a resident of Nashville, Tennessee, is an employee of Country Music Television ("CMT"), a cable television company owned by Viacom and based in Nashville, Tennessee. (Docket Entry No. 1 at, ¶¶ 1, 8-9). Plaintiff is a beneficiary under the Viacom Medical Plan ("the Plan") as a Viacom employee. Id. at ¶¶ 9-10. "Viacom self-funds the Plan, and the VRC and United administer the Plan." Id. at ¶ 11. VRC is the Plan Administrator as defined by ERISA. Id. at ¶ 4. United is the claims administrator for the Plan. Id. at ¶ 5.

Plaintiff suffers from severe, treatment resistant obsessive compulsive disorder ("OCD"). Id. at ¶ 12. According to Plaintiff, "OCD is a disease wherein unwanted, intrusive thoughts ('obsessions') bombard the brain, causing the patient to perform unwanted, exhausting rituals ('compulsions')." Id. at ¶ 12. Plaintiff states that his OCD impacts every aspect of his life, including his ability to function at work, to relax at home, his relationships, his day-to-day life, and other aspects of his health. Id. Since his teenage years, Plaintiff was examined by a variety of specialists across the country. Id. at ¶ 13. Over the years, Plaintiff received inpatient and outpatient treatment,

2

and was treated with cognitive behavioral therapy, counseling and psychotherapy, and many medications for his OCD. Id. at ¶ 13.

Recently, the Food and Drug Administration ("FDA") approved Deep Brain Stimulation ("DBS"), as a new treatment for OCD. Id. at ¶ 14. According to Plaintiff, DBS involves the insertion of a small electrical lead into the part of the brain where OCD arises and a small battery or batteries are inserted beneath the skin in the chest region. Id. The batteries fire the lead, disrupting the circuitry in the brain responsible for recurrent OCD thought patterns. Id. In April 2010, Plaintiff was examined at Butler Hospital/Brown University ("Butler") in Providence, Rhode Island, and was diagnosed with severe, treatment-resistant OCD and was determined to be a viable candidate for DBS treatment. Id. at ¶¶ 17-18.

On or about June 22, 2010, Butler filed a claim on Plaintiff's behalf with United, seeking pre-authorization and approval for DBS as a medically necessary treatment. Id. at ¶ 19. In a letter from Dr. Benjamin Greenberg, Chief of Outpatient Services/Associate Professor of Psychiatry at Butler, submitted by Butler in support of Plaintiff's claim, Dr. Greenberg stated that "I would like to preface this letter by stating that this is a very urgent request, and we would appreciate if you would respond as soon as possible." Id. On July 22, 2010, United denied Plaintiff's claim. Id. at ¶ 20. In the denial letter, Dr. R. Satten stated, in relevant part, the following:

> I have reviewed the treatment plan that was submitted by Butler Hospital and have determined that coverage is not available under your benefit plan for the requested services for Deep Brain Stimulation for treatment resistant OCD. As described in your Summary Plan Description: Deep Brain Stimulations (sic) services except psychiatric consultation and therapy are not covered under the behavioral benefit but may be covered under the medical benefit. However, the medical benefit appears to exclude "psychosurgery expenses" in the SPD. This determination does not mean that you do not require additional health care, or that you need to be discharged. Decisions about continuation of treatment should be made by you and your provider.

3

> The purpose of this letter is to inform you that I have determined that coverage is not available under your benefit plan for the requested service. On 7/9/2010, we notified your provider of this determination by telephone.

Id. at ¶ 21. Dr. Satten further stated that because the plan was self-funded Plaintiff and Butler should appeal directly through Viacom, explaining that Viacom could change the terms of the plan and cover the procedure. Id. at ¶ 22.

Plaintiff attempted to assert his appeal rights directly through Viacom's human resources offices and was instructed to contact John Jacobs, an attorney and Viacom's Vice-President for International Employee Benefits, and Linda Sollitto, a Viacom representative. Id. at ¶ 23. In September 2010, Plaintiff sent several emails and left several messages with Jacobs and Sollitto, informing them that he had been instructed to appeal directly through Viacom and provide the information Sollitto requested, such as diagnosis codes. Id. Plaintiff also made many inquiries and requested documentation about Viacom's appeal process, but did not receive any meaningful response. Id. In a September 16, 2010, email, Sollitto wrote: "I am still getting some more details but although Obsessive Compulsive Disorder is a covered benefit, psychotherapy (sic) is not a covered treatment under our plan. As soon as I have more details I will share them." Id. at ¶ 24.

Plaintiff made several more attempts to find out how to appeal through Viacom by emailing, calling and contacting various individuals, but did not receive any meaningful response. Id. at ¶ 25. On September 28, 2010, Plaintiff emailed Sollitto requesting information about the appeal process. Id. After not receiving a response, Plaintiff emailed Sollitto again on October 14, 2010. Id. at ¶ 26. On October 15, 2010, Sollitto replied stating, "The treatment you had is not covered as it is considered experimental. In order to file a formal appeal to see if the plan will cover it, you will need to indicate why traditional treatments were not used." Id. at ¶ 27. Sollitto later responded that

4

Case 3:11-cv-00214   Document 48   Filed 09/21/11   Page 4 of 12 PageID #: 228

Plaintiff should appeal through United, but then informed him that he was to appeal through VRC. Id. at ¶ 28. Plaintiff continued to deal directly with Viacom about the review of his claim, and Viacom communicated repeatedly that it was reviewing Plaintiff's Claim. Id.

Jacobs communicated with Plaintiff concerning Plaintiff's claim several times in November and December 2010, informing Plaintiff that his claim was still being processed and that Jacobs hoped he would have an answer soon. Id. at ¶¶ 29-32, 34-35. Jacobs subsequently promised that Plaintiff would receive a decision on his claim by the week of January 31, 2011. Id. at ¶ 36. Yet, on February 14, 2011, Viacom advised that it had not reached a decision on the claim. Id. at ¶ 39. Plaintiff filed his complaint in this Court on March 8, 2011. Plaintiff alleges the following:

> From the date of the Denial Letter through the date of the filing of this Complaint, Viacom has provided Mr. Belcher with little information regarding the appeals procedure, the infomlation that should be submitted, to whom it should be submitted, or the time-line for the appeals process. When Viacom has provided Mr. Belcher with information, it has often been either contradictory or incorrect. For instance, Mr. Belcher has been told not to utilize the appeals process spelled out in the SPD, which would route his appeal through United, but rather, to appeal directly to Viacom, and he has attempted to do so, but has not received a decision on his Claim. Likewise, he has variously been informed by Viacom that it is reviewing the Claim, that a decision is imminent, and that the Claim was originally denied because the treatment is "experimental."

Id. at ¶ 41.

In Count I of Plaintiff's complaint, Plaintiff asserts a claim for denial of ERISA benefits. Plaintiff argues that United's denial of his claim was wrongful, arbitrary and capricious. Id. at ¶ 52. Plaintiff alleges that United informed him that any appeal should be through Viacom and the "Viacom Defendants subsequently engaged in a sustained dialogue with Mr. Belcher and his medical providers during which time, both by their statements and their course of action, they confirmed that they would be handling the appeal, and not United." Id. at ¶ 53.

5

In Count II, Plaintiff asserts a breach of fiduciary claim against Defendants and seeks damages under 29 U.S.C. § 1132(a)(2). Id. at ¶¶ 60-61. Plaintiff alleges that Defendants have failed to offer him a full and fair review of his claim and have refused to provide Plaintiff with a decision on his claim and that Defendants' "acts and omissions" and misrepresentations constitute breaches of their fiduciary duties and are "actionable pursuant to 29 U.S.C. §§ 1104, 1109, and 1132(a)(2)." Id. at ¶ 59, 60. In addition, in Count III Plaintiff seeks injunctive relief under 29 U.S.C. § 1132(a)(3) for Defendants' breach of duties under ERISA. Id. at ¶¶ 62-64. Finally, in Count IV of his complaint, Plaintiff seeks statutory penalties under 29 U.S.C. § 1132(a)(1)(A), (c) for Defendants' failure to comply with ERISA's disclosure requirements. Id. at ¶¶ 65-66.

## II. CONCLUSIONS OF LAW

Upon a motion to dismiss, "a civil complaint only survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Courie v. Alcoa Wheel & Forged Prods., 577 F.3d 625, 629 (6th Cir. 2009) (quoting Ashcroft v. Iqbal, _ U.S. _, 129 S.Ct. 1937, 1949 (2009)) (citation omitted). The Court must "'construe the complaint in the light most favorable to the plaintiff, accept all its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 903 (6th Cir. 2009) (citation omitted). The Court "'need not accept as true legal conclusions or unwarranted factual inferences . . . and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.'" Id. at 903 (citations and quotation marks omitted).

In Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), the Supreme Court explained the requirements for sustaining a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id., at 555 (citing Papasan v. Allain, 478 U.S. 265, 286, (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557 (brackets omitted).

Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555, . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1949-50.

As the Sixth Circuit stated, "[a] motion under rule 12(b)(6) is directed solely to a complaint itself . . . [.]" Sims v. Mercy Hosp., 451 F.2d 171, 173 (6th Cir. 1971). Yet, in evaluating a plaintiff's complaint, under Fed. R. Civ. P. 10(c), any matters attached to the pleadings are considered part of the pleadings, as are documents that a defendant attaches to a motion to dismiss that are referred to in the complaint and "central" to the claim. Weiner v. Klais and Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997); Bassett v. National Collegiate Athletic Ass'n 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").

Defendant contends that Plaintiff, as an individual, is not entitled to relief under § 1132(a)(2) for breach of fiduciary duty as such relief under § 1132(a)(2) is only available to the plan, not to individual participants and that Plaintiff cannot pursue a claim for breach of fiduciary duty under § 1132(a)(3) where he has an available remedy based upon a claim for denial of benefits under § 1132(a)(1)(B). Plaintiff argues that Defendant acted as a fiduciary of the Plan when it exercised its discretion in verbally countermanding the plain terms of the Plan documents and instructed the Plaintiff to appeal through Viacom, rather than to follow the appeals procedure set forth in the plan itself. Plaintiff also argues that his complaint alleges a separate denial of benefits claim and a breach of duty claim, i.e., after his application for benefits was denied, the Defendants made material misrepresentations to him, denying him an opportunity for appeal.

8

Section 1132(a)(2) states that "[a] civil action may be brought by . . . a participant, beneficiary or fiduciary for appropriate relief under section 1109."[1] In Massachusetts Mutual Life Insurance Co. v. Russell, 473 U.S. 134 (1985), the Supreme Court stated:

> There can be no disagreement with the Court of Appeals' conclusion that § 502(a)(2) [29 U.S.C. § 1132(a)(2)] authorizes a beneficiary to bring an action against a fiduciary who has violated section 409. Petitioner contends, however, that recovery for a violation of § 409 inures to the benefit of the Plan as a whole. We find this contention supported by the text of § 409 [29 U.S.C. § 1109], by the statutory provisions defining the duties of a fiduciary, and by the provisions defining the rights of a beneficiary.

Id. at 140; Pfahler v. National Latex Products Co., 517 F.3d 816, 825 (6th Cir. 2007) ("Because a § 502(a)(2) [29 U.S.C. § 1132(a)(2)] suit is a derivative action, a plaintiff bringing suit under this provision cannot obtain personal monetary relief, but must instead seek relief for the plan."). Thus, "relief under § 1132(a)(2) is available only to the plan and not to individual participants and fiduciaries." Ramsey v. Formica Corp., No. 1:04–CV–149, 2004 WL 1146334, at *4 (S.D. Ohio April 6, 2004) (emphasis added).

Here, Plaintiff seeks monetary damages for himself, not the Plan. Thus, this claim is without merit.

Next, Defendant asserts that Plaintiff cannot assert both a claim for benefits under § 1132(a)(1)(B) and a claim for breach of fiduciary duty under § 1132(a)(3). Section 1132(a)(1)(B)

---

[1]Title 29 U.S.C. § 1109(a) provides the following:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. . . .

9

states that a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Section 1132(a)(3) states that an action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

In Varity Corp. v. Howe, 516 U.S. 489 (1996), the Supreme Court held that § 502(a)(3), "a 'catchall provision' identical to 29 U.S.C. § 1132(a)(3), authorizes lawsuits for individualized equitable relief for breach of fiduciary duty and other injuries 'by violations that [§ 1132] does not elsewhere adequately remedy.'" Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 615 (6th Cir. 1998) (quoting Varity, 516 U.S. at 512). According to the Sixth Circuit, "[t]he Supreme Court clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies." Id.; see id. ("Because § 1132(a)(1)(B) provides a remedy for Wilkins's alleged injury that allows him to bring a lawsuit to challenge the Plan Administrator's denial of benefits to which he believes he is entitled, he does not have a right to a cause of action for breach of fiduciary duty pursuant to § 1132(a)(3)."); Marks v. Newcourt Credit Group, Inc., 342 F.3d 444, 454 (6th Cir. 2003) ("[A] participant cannot seek equitable relief for a breach of fiduciary duty under the catchall provision of § 502(a)(3) if the alleged violations are adequately remedied under other provisions of § 502.").

Here, Plaintiff's allegations are based upon a claim for denial of benefits under § 1132(a)(1)(B). Thus, the Court concludes that Plaintiff's breach of fiduciary claim is duplicative of his claim for benefits and should therefore be dismissed.

Defendant asserts that Plaintiff's contention that Defendant acted as a fiduciary of the Plan "when it exercised its discretion in verbally countermanding the plain terms of the Plan documents and instructed the Plaintiff to appeal through Viacom, rather than to follow the appeals procedure set forth in the plan itself" is, in essence, an equitable estoppel argument masking as a breach of fiduciary claim. Equitable estoppel is a viable theory in ERISA cases. Marks, 342 F.3d at 456.[2] Yet, "[a] party cannot seek to estop the application of an unambiguous written provision in an ERISA plan." Id. "'[T]o allow estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves.'" Id. (quoting Sprague v. Gen. Motors Corp., 133 F.3d 388, 404 (6th Cir.) (en banc), cert. denied, 524 U.S. 923 (1998)). In his response, Plaintiff specifically states that Defendant countermanded the "plain terms" of the Plan documents and instructed the Plaintiff to appeal through Viacom, rather than to follow the appeals procedure "set forth in the plan itself." (Docket Entry No. 40 at 3-4). Thus, the Court concludes that Plaintiff cannot rely upon an estoppel theory.

As to Plaintiff's claim for failure to supply requested documents, § 1132(c)(1) provides as follows:

---

[2]The elements of an equitable estoppel claim under ERISA are as follows:

> 1) conduct or language amounting to a representation of material fact; 2) awareness of the true facts by the party to be estopped; 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; 4) unawareness of the true facts by the party asserting the estoppel; and 5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

Trustees of Michigan Laborers' Health Care Fund v. Gibbons, 209 F.3d 587, 591 (6th Cir. 2000) (citations omitted).

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. . . .

Id. "ERISA defines the plan administrator as 'the person specifically so designated by the terms of the instrument under which the plan is operated.'" Hiney Printing Co. v. Brantner, 243 F.3d 956, 960 (6th Cir. 2001) (quoting 29 U.S.C. § 1002(16)(A)). In Hiney Printing, the Sixth Circuit stated, "[t]he law in this Circuit is clear that '[o]nly a plan administrator can be held liable under section 1132(c).'" Id. at 961 (quoting VanderKlok v. Provident Life & Accident Insurance Co., 956 F.2d 610, 617 (6th Cir.1992)); see id. (noting the lack of precedent for expanding the statutory definition of a plan administrator under ERISA).

In his Complaint, Plaintiff alleges that VRC is the "plan administrator" and that Defendant United is identified in the Viacom United Healthcare (UHC) Choice Plus Option Summary Plan Description (the "SPD") as the claim administrator. (Docket Entry No. 1, at ¶¶ 4-5). Defendant admittedly is not the "plan administrator." Based upon Sixth Circuit authority, the Court concludes that this claim should be dismissed.

Accordingly, for these reasons, the Court concludes that Defendant's motion to dismiss Counts II, III and IV of Plaintiff's complaint (Docket Entry No. 18) should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the 26 day of September, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge

12

Case 3:11-cv-00214   Document 48   Filed 09/21/11   Page 12 of 12 PageID #: 236